IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM F. STAIR, by and through his appointed power of attorney Dean Smith, on behalf of himself and all others similarly situated, | HON. JEROME B. SIMANDLE |
| | Civil No. 06-4454 (JBS) |
| Plaintiff, | **OPINION** |
| v. | |
| THOMAS & COOK and RODMAN L. COOK, | |
| Defendants. | |

APPEARANCES:

Donald M. Doherty, Jr., Esq.
FRIEDMAN DOHERTY, LLC
125 North Route 73
West Berlin, NJ 08091
    Attorney for Plaintiff William F. Stair

F. Michael Daily, Jr., Esq.
Amy B. Sunnergren, Esq.
F. MICHAEL DAILY, JR., LLC
Sentry Office Plaza
216 Haddon Avenue
Suite 100
Westmont, NJ 08108
    Attorney for Defendants Thomas & Cook and Rodman L. Cook

**SIMANDLE**, District Judge:

Plaintiff filed this action on behalf of himself and others similarly situated, alleging that a debt collection letter that he received from Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. Presently before the Court is Plaintiff's motion for class certification

and for summary judgment, in which Plaintiff also moves for an award of attorney's fees [Docket Item 24].  For the reasons set forth below, the Court will grant Plaintiff's motion for class certification and for summary judgment as to the issues of liability and damages, but will deny Plaintiff's request for attorney's fees as premature, without prejudice to renewal.

## I.    BACKGROUND

### A.    Facts

This action arises out of debt collection letters that Defendants mailed to Plaintiff[1] and 227 other individuals between September 20, 2005 and September 20, 2006.  (Doherty Cert. Ex. 1.)  The individually named Defendant in this case, Rodman L. Cook, Esq., is an attorney employed by Defendant business organization Thomas & Cook.  (Compl. ¶ 3.)  According to Plaintiff, Defendants engage regularly in the practice of consumer debt collection.  (Id. at ¶ 6.)

On July 13, 2006, Defendants mailed Plaintiff a letter printed on Thomas & Cook letterhead (the "July 2006 letter") pertaining to a debt that Plaintiff allegedly owed to Underwood Memorial Hospital ("UMH").  (Doherty Cert. Ex. 1.)  The body of the letter contains four paragraphs which read as follows:

---

[1]  Because Plaintiff Stair is paralyzed and frequently hospitalized, his nephew, Dean Smith, holds power of attorney for Mr. Stair to manage his "financial and related affairs."  (Smith Cert. ¶¶ 1-4.)

The above matter has been turned over to us for collection.  There is due upon this account the sum of $2,557.00.

Before instituting suit upon this debt, we thought it advisable to offer you this opportunity of making payment without coercion.  Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt, or any portion thereof, this office will assume the debt is valid.  If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt and mail you a copy of such verification.  If you request this office in writing within 30 days after receiving this notice, this office will: provide you with the name and address of the original creditor, if different from the current creditor.  This is an attempt to collect a debt.  Any information will be used for that purpose.

If you would save yourself the annoyance and expense of legal action, kindly send us the amount due.

Let us hear from you before July 27, 2006.

(Doherty Cert. Ex. 1.)  On August 4, 2006, Mr. Cook filed a lawsuit in the Superior Court of New Jersey against Mr. Stair on behalf of UMH in order to collect the debt.  (Smith Cert. Ex. 5-c.)  Plaintiff received the summons and complaint for the Superior Court lawsuit on August 18, 2006.  (Compl. ¶ 8.)

Between September 20, 2005 and September 20, 2006, Defendants sent to 227 individuals similar debt collection letters.  (Doherty Cert. ¶ 4.)  The parties do not dispute that the contents of these letters were identical in all relevant respects to the letter mailed to Plaintiff – while the individual letters contained different names, debt amounts, and dates, each letter provided the same two-week response window while also

purporting to afford the recipient thirty days to dispute the debt.  (Id.)

**B.   Procedural History**

On September 20, 2006, Plaintiff, through his appointed power of attorney Dean Smith, filed his Complaint in this action, alleging on behalf of himself and the similarly situated recipients of Defendants' debt collection letters that the letters violated various provisions of the FDCPA, including 15 U.S.C. § 1692g.  (Compl. ¶¶ 9-13.)  Section 1692g requires that debt collectors provide certain information in writing to a consumer within five days of the "initial communication" with the consumer, and "mandates the debt collector to cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer."  Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000) (citing 15 U.S.C. § 1692g(b)).  Defendants moved for summary judgment, arguing that the letter they mailed to Plaintiff complied with the notice requirements set forth in section 1692g.

In its February 7, 2008 Opinion and Order, the Court denied Defendants' motion for summary judgment.  (Docket Items 20 and 21.)  The Court first explained:

> In addressing whether a debt collection letter comports
> with the Act's notice provisions, the Court of Appeals

4

for the Third Circuit has been clear that "statutory notice must not only explicate a debtor's rights; it must do so effectively." Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991); see also Wilson, 225 F.3d at 354. The effectiveness of a collection letter's provision of notice is to be "interpreted from the perspective of the 'least sophisticated debtor.'" Graziano, 950 F.2d at 111. Applying this standard, courts have held that where the statutory notice in a debt collection letter is "overshadowed," Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222, 1225 (9th Cir. 1988), or "contradicted by accompanying messages from the debt collector," Graziano, 950 F.2d at 111, such notice has not been provided effectively within the meaning of 15 U.S.C. § 1692g.

(Docket Item 20 at 8-9.)

The Court then held that, under this "least sophisticated debtor" standard, the explication of section 1692g rights in Defendants' letter to Plaintiff was contradicted and undermined by the letter's remaining contents:

The Court [finds] . . . that the statutory notice provisions in the July 2006 letter are sufficiently contradicted by its remaining contents that the least sophisticated debtor would harbor serious doubts as to his ability to dispute or verify the debt within thirty days. Foremost among the Court's concerns regarding the likelihood that an unsophisticated debtor would misunderstand his rights upon reading the letter are the confusing timelines the letter presents. In the absence of its final sentence – "Let us hear from you before July 27, 2006" – the letter would make clear that the recipient risks "the annoyance and expense of legal action" and other "coercion," but would also inform the recipient of his rights under 15 U.S.C. § 1692g. The final sentence, however, undermines the significance of the section 1692g notice, in that it announces a deadline far short of the thirty-day window but does nothing to reconcile this shorter time frame with the preceding statement of the debtor's rights. The Court is convinced that an unsophisticated debtor, confronted with repeated threats of litigation and a two-week deadline, "would be

5

induced to overlook his statutory right to dispute the debt within thirty days." <u>Graziano</u>, 950 F.2d at 111.

(<u>Id.</u> at 11-12) (some internal citations omitted).

Finally, the Court noted, in light of the letter's apparent noncompliance with the FDCPA, that Plaintiff, rather than Defendants, appeared to be entitled to judgment as a matter of law on the question of liability.  (<u>Id.</u> at 15.)  Recognizing, however, that "great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that the opponent is not entitled to judgment as a matter of law," 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 2001), the Court afforded Defendants the opportunity to submit evidence in opposition to the entry of summary judgment in Plaintiff's favor as to the issue of liability.  (Docket Item 20 at 15.)

Shortly after the Court issued its Opinion and Order denying Defendants' motion for summary judgment, Plaintiff filed its motion for class certification and summary judgment [Docket Item 24], as amended to include a different form of proposed order [Docket Item 25], to the merits of which the Court now turns.

## II.  DISCUSSION

Plaintiff has moved to certify as a class the 227 consumers who received Defendants' form letter between September 20, 2005 and September 20, 2006, and has moved for summary judgment as to

6

liability and damages for this class's claims.  As the following discussion makes clear, the viability of both aspects of Plaintiff's motion turns in part on the resolution of a threshold legal question regarding the applicability of section 1692g of the FDCPA to the initial communications of so-called subsequent debt collectors.  The Court addresses this matter at the outset before addressing the merits of Plaintiff's motion for class certification and summary judgment.

**A.    Applicability of Section 1692g to the Initial Communications of Subsequent Debt Collectors**

In opposing Plaintiff's motion, Defendants argue that summary judgment as to Mr. Stair's claim should not be entered against them because although the July 2006 letter was Defendants' "initial communication with [Mr. Stair] in connection with the collection of [his alleged] debt," § 1692g, the fact that they were not the first debt collectors to communicate with Mr. Stair about this debt relieves them of any obligation to comply with the FDCPA's notice and validation requirements.[2]  For

---

[2]  Defendants raise the argument that they were not the first debt collectors to communicate with Mr. Stair about the debt Mr. Stair owed UMH for the first time in opposing Plaintiff's motion for summary judgment.  As Defendants now claim, a company called Financial Recoveries first sent Plaintiff a debt collection letter (the "Financial Recoveries letter"), after which the matter was referred to Defendants, who subsequently mailed the collection letter at issue in this case. (Minuchi Decl. ¶¶ 2-11.)  No record of the letter purportedly mailed by Financial Recoveries exists, nor do Defendants indicate the date when this letter was allegedly mailed.  (Id. at ¶ 8.)
   While the Court finds, infra, that the existence of the

the reasons now explained, the Court rejects this argument and holds that section 1692g applies to the initial communications of subsequent debt collectors like Defendants.

Congress enacted the FDCPA "to eliminate abusive debt collection practices which contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Wilson, 225 F.3d at 354

---

Financial Recoveries letter did not relieve Defendants of their obligation to comply with section 1692g, it also agrees with Plaintiff that because Defendants failed to disclose, first, the identity of Thomas Minuchi, an employee of Financial Recoveries whose Declaration they now proffer, and, second, the Financial Recoveries form letter upon which they now rely, they are precluded from "us[ing] that information or witness to supply evidence on [the] motion" presently under consideration. Fed. R. Civ. P. 37(c)(1). As part of their preliminary discovery obligations, Defendants were required, "without awaiting a discovery request," to provide Plaintiff with both "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses," and "a copy--or a description by category and location--of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Rule 37(c)(1) provides "mandatory sanctions," Fitz, Inc. v. Ralph Wilson Plastics Co., 174 F.R.D. 587, 591 (D.N.J. 1997), if a party "fails to provide information or identify a witness as required by Rule 26(a)," unless the failure was harmless or excused by "substantial justification." Fed. R. Civ. P. 37(c)(1).

Defendants failed to include the evidence upon which they now seek to rely in their initial disclosures, and made no apparent effort to supplement their disclosures pursuant to Rule 26(e), Fed. R. Civ. P. Defendants have likewise proposed no substantial justification for their failure of disclosure. Hence, even if the Financial Recoveries letter and Minuchi Declaration were material – which, as the Court explains, infra, they are not – Defendants would not be permitted to rely on them in opposing the motion presently before the Court.

8

(quoting <u>Miller v. Payco-General American Credits, Inc.</u>, 943 F.2d
482, 483-84 (4th Cir. 1991) (in turn quoting 15 U.S.C. §§ 1692a
and 1692e)).  In furtherance of this goal of eliminating certain
debt collection practices, the FDCPA requires that

> [w]ithin five days after the initial communication with
> a consumer in connection with the collection of any debt,
> a debt collector shall, unless the following information
> is contained in the initial communication or the consumer
> has paid the debt, send the consumer a written notice
> containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty
> days after receipt of the notice, disputes the validity
> of the debt, or any portion thereof, the debt will be
> assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt
> collector in writing within the thirty-day period that
> the debt, or any portion thereof, is disputed, the debt
> collector will obtain verification of the debt or a copy
> of a judgment against the consumer and a copy of such
> verification or judgment will be mailed to the consumer
> by the debt collector; and
>
> (5) a statement that, upon the consumer's written request
> within the thirty-day period, the debt collector will
> provide the consumer with the name and address of the
> original creditor, if different from the current
> creditor.

§ 1692g(a).  Section 1692g(b) further provides that

> [i]f the consumer notifies the debt collector in writing
> within the thirty-day period described in subsection (a)
> of this section that the debt, or any portion thereof, is
> disputed, or that the consumer requests the name and
> address of the original creditor, the debt collector
> shall cease collection of the debt, or any disputed
> portion thereof, until the debt collector obtains
> verification of the debt or a copy of a judgment, or the

9

name and address of the original creditor, and a copy of
such verification or judgment, or name and address of the
original creditor, is mailed to the consumer by the debt
collector.

§ 1692g(b).

In determining whether section 1692g applies to the initial
communications of subsequent debt collectors, the Court's
starting point, of course, is the statutory text.  "In matters of
statutory interpretation, the plain meaning of statutory language
is often illuminated by considering not only the particular
statutory language at issue, but also the structure of the
section in which the key language is found, the design of the
statute as a whole and its object."  United States v. Manzella,
475 F.3d 152, 157 (3d Cir. 2007) (internal quotations and
citations omitted).  The Court first notes, as have other courts,
that the "language [of section 1692g(a) itself] does not specify
whether each subsequent debt collector on each separate debt must
provide a validation notice."  Turner v. Shenandoah Legal Group,
P.C., No. 06-045, 2006 WL 1685698, at *9 (E.D. Va. June 12,
2006).  Whether the "initial communication" in section 1692g(a)
refers to each debt collector's initial communication with the
consumer or only the first debt collector's initial communication
is not answered by the text of section 1692g(a) alone, as either
interpretation is plausible under the language of section
1692g(a).

10

Examination of "object" of the FDCPA and "the structure of the section in which the key language is found," however, makes apparent that section 1692g's notice requirements apply equally to the initial communications of first and subsequent debt collectors.  Manzella, 475 F.3d at 157.  As the Court of Appeals has repeatedly emphasized, "[b]ecause the FDCPA is a remedial statute, we construe its language broadly, so as to effect its purpose."  Brown v. Card Service Center, 464 F.3d 450, 453 (3d Cir. 2006) (citation omitted).  Numerous courts have recognized that the FDCPA's purpose – "to eliminate abusive debt collection practices," Wilson, 225 F.3d at 354 – would be undermined if subsequent debt collectors were excused from complying with the requirements contained in section 1692g.  See, e.g., Turner, 2006 WL 1685698, at *10; Francis v. Snyder, 389 F. Supp. 2d 1034, 1040 n.2 (N.D. Ill. 2005) ("the requirement of providing valid disclosures under § 1692g applies to each debt collector"); Tipping-Lipshie v. Riddle, No. 99-4646, 2000 WL 33963916, at *3 (E.D.N.Y. Mar. 2, 2000).  In Turner, the court explained that "to not require such notice by a separate entity[] would create a loophole, an end-run around the validation notice requirement." Turner, 2006 WL 1685698, at *10.

The Court finds that Turner's concern over the loophole that Defendants' interpretation of section 1692g would create is well-founded.  Specifically, an unsophisticated consumer who receives

11

a promise from the first debt collector that its collection efforts would cease upon a request for verification, and a letter from a subsequent debt collector containing no such promise, could reasonably question whether the potentially uninterrupted activities of the subsequent debt collector would interfere with his ability to exercise his verification rights.  This is particularly true where, as here, the letter from the first debt collector states that "[i]f you notify this office . . . within 30 days from receiving this notice, this office will obtain verification of the debt."  (Cook Decl. Ex. A) (emphasis added). Even a sophisticated debtor might reasonably, but incorrectly, assume that it is only the office referenced in the letter containing the section 1692g notice that would be obligated to verify the debt upon request.  Such a debtor could reasonably "be induced to overlook his statutory right to dispute the debt within thirty days." Graziano, 950 F.2d at 111.  Given that "communications from lenders to debtors should be analyzed from the perspective of the least sophisticated debtor," Brown, 464 F.3d at 453 (internal quotations and citations omitted), the "end-run around the validation notice requirement" that Defendants' approach would create would undermine the significance of section 1692g and frustrate the purpose of the FDCPA. Turner, 2006 WL 1685698, at *10.

12

The Federal Trade Commission's commentary (the "FTC Commentary") to the FDCPA lends further support to the Court's conclusion.  The FTC Commentary, consistent with multiple informal advisory opinions the FTC has issued, (Doherty Cert. Exs. 7-8), states that

> [a]n attorney who regularly attempts to collect debts by means other than litigation, such as writing the consumer demand letters (dunning notices) or calling the consumer on the phone about the obligation (except in response to a consumer's call to him after suit has been commenced), must provide the required notice, <u>even if a previous debt collector (or creditor) has given such a notice.</u>

53 Fed. Reg. 50097, 50108 (1988) (emphasis added).  While the Court recognizes that the FTC Commentary is "by no means binding," <u>Staub v. Harris</u>, 626 F.2d 275, 279 (3d Cir. 1980), and is entitled to deference only "to the extent [its] logic is persuasive," <u>Brown</u>, 464 F.3d at 455 (citation omitted), the Court finds that the Commentary buttresses the holdings of the above-cited cases regarding the applicability of section 1692g to subsequent debt collectors, and is persuasive in this case.

In short, the Court finds that the interpretation of section 1692g advanced by Plaintiff, the FTC, and the above-cited cases is consistent with both the text and object of the FDCPA, and that Defendants' interpretation would subvert the FDCPA's purpose of "eliminat[ing] abusive debt collection practices," <u>Wilson</u>, 225 F.3d at 354, by creating a loophole in section 1692g that undermines the significance of section 1692g's notice

13

requirements.  The Court accordingly holds that "[t]he requirement of providing valid disclosures under § 1692g applies to each debt collector."  <u>Francis</u>, 389 F. Supp. 2d at 1040 n.2. As the following discussion makes clear, this determination impacts the Court's consideration of Plaintiff's motion for class certification and for summary judgment.

**B.   Motion for Class Certification**

    1.   <u>Overview</u>

"District courts have discretion under Rule 23 to certify a class."  <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 297 (3d Cir. 2006). To certify a class, the Court must find that the proposed class meets the prerequisites to a class action; "plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met."  <u>In re Chiang</u>, 385 F.3d 256, 264 (3d Cir. 2004).  "The burden of proving each of the requisite elements of Rule 23 rests with the party seeking certification." <u>Jones v. Goord</u>, 190 F.R.D. 103, 111 (S.D.N.Y. 1999) (citing <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997)). However, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage, and . . . in determining whether a class will be certified, the substantive allegations of the complaint must be taken as true."  <u>Chiang</u>, 385 F.3d at 262.  "Depending on the circumstances, [however,] class certification questions are sometimes 'enmeshed in the factual

and legal issues comprising the plaintiff's cause of action,' and

'courts may delve beyond the pleadings to determine whether the

requirements for class certification are satisfied.'" <u>Beck</u>, 457

F.3d at 297 (quoting <u>Newton v. Merrill Lynch, Pierce, Fenner &</u>

<u>Smith, Inc.</u>, 259 F.3d 154, 167 (3d Cir. 2001)).

### 2.   Federal Rule of Civil Procedure 23(a)

Rule 23(a), Fed. R. Civ. P., provides:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the
> class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties
> will fairly and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a).  Plaintiff seeks to certify a class

defined as:

> All those 227 natural persons who received collection
> correspondence from the Defendants Rodman Cook and the
> Thomas & Cook law firm dated between September 20, 2005
> through to September 20, 2006 seeking to collect upon a
> consumer debt and which included a 30[-]day time frame to
> validate the debt yet sought a response within a time
> less than the 30 days.  Excluded from the class are
> Plaintiff's counsel and the relatives of and employees
> under the direct oversight of the Honorable Jerome B.
> Simandle, J.U.S.D.C.

(Docket Item 27.)  As the following discussion makes clear, the

Court agrees with Plaintiff that the proposed class satisfies the

four criteria of Rule 23(a).

a.  <u>Numerosity</u>

The above-defined class satisfies the numerosity requirement of Rule 23(a).  As the Court of Appeals has explained, "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001).  The evidence in the record indicates that 227 individuals received similar versions of the letter at issue in this lawsuit.  (Doherty Cert. ¶ 4.)  The Court finds that this "class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a).

b.  <u>Commonality</u>

Rule 23(a) also requires that "there are questions of law or fact common to the class."  <u>Id.</u>  Because where, as here, "an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by [Rule 23(b)(3)'s] predominance requirement," <u>Danvers Motor Co., Inc. v. Ford Motor Co.</u>, --- F.3d ----, 2008 WL 4181728, at *6 (3d Cir. Sept. 12 2008) (internal quotations and citations omitted), the Court addresses the questions of commonality and predominance in its consideration of Rule 23(b)(3), <u>infra</u>.  See <u>In re LifeUSA Holding Inc.</u>, 242 F.3d 136, 144 (3d Cir. 2001) (noting that "because the Rule 23(b)(3) predominance requirement incorporates the commonality requirement

16

of Rule 23(a) we must treat them together"). Commonality will therefore be addressed below with the issue of predominance.

           c.   <u>Typicality</u>

Defendants direct the majority of their arguments opposing Plaintiff's motion for class certification for Rule 23(a)'s typicality prong. To address the question of typicality, the Court assesses

> whether the named [plaintiff's] claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiff[] are aligned with those of the class. Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.

<u>Beck</u>, 457 F.3d at 295-96 (internal quotations and citations omitted). Put differently, "[t]ypicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." <u>Hassine v. Jeffes</u>, 846 F.2d 169, 177 (3d Cir. 1988) (internal quotations and citations omitted).

The Court finds that Plaintiff's claim is factually and legally typical of those of the 227 class members, and is not persuaded by Defendants' argument that the circumstances giving rise to Plaintiff's claim make him unsuitable to represent the class. Plaintiff's claim is factually typical of the class

members' claims, in that Plaintiff, like the class members, received a debt collection letter in which Defendants purported to afford section 1692g notice, but in which such provision of notice was "contradicted by accompanying messages from the debt collector." Graziano, 950 F.2d at 111.  Because the letter Plaintiff received from Defendants was identical to those received by the class members in all relevant respects, Plaintiff's claim is legally typical of the class members' claim as well; Plaintiff's claim, like the class members', turns on whether or not Defendants' letters, which purported to afford the statutory notice while imposing a response deadline short of the thirty-day statutory period, ran afoul of section 1692g. Plaintiff's individual circumstances and legal claims are typical of the class members' in all material respects.  See Beck, 457 F.3d at 295-96.

     Defendants' arguments to the contrary are unavailing. Defendants first argue that because Plaintiff received a prior communication from a different debt collector about the debt in question,[3] whereas many class members did not, Plaintiff's claim is factually and legally atypical those of the class he seeks to represent.  However, as the Court held, supra, this distinction is immaterial, because "[t]he requirement of providing valid disclosures under § 1692g applies to each debt collector,"

_____

     [3]  See Note 2, supra.

18

including subsequent debt collectors.  <u>Francis</u>, 389 F. Supp. 2d
at 1040 n.2; <u>see</u> <u>also</u> <u>Turner</u>, 2006 WL 1685698, at *10;
<u>Tipping-Lipshie</u>, 2000 WL 33963916, at *3; FTC Commentary to the
FDCPA, <u>supra</u>, 53 Fed. Reg. 50097, 50108 (1988).  Because this
alleged factual distinction does not make Plaintiff's claim
legally distinguishable from other class members' claim,
Defendants' reliance on this point to defeat the motion for class
certification is misplaced.

Defendants further argue that Plaintiff's claim is atypical
of the class members' because while Plaintiff meets the FDCPA's
statutory definition of "consumer," any commercial entities among
the proposed class would not.  <u>See</u> 15 U.S.C. § 1692a(3) ("The
term 'consumer' means any natural person obligated or allegedly
obligated to pay any debt").  Defendants' argument is without
merit.  First, even if there were any commercial entities among
the proposed class, this would not render Plaintiff's claims
atypical of the class members', but would simply render such
commercial recipients of Defendants' debt collection letters
ineligible for class membership.[4]  More to the point, however, is
the fact that there are no commercial entities among the 227
class members, as the Certification of Plaintiff's counsel,
(Doherty Cert. ¶ 4), and Defendants' own records, (Cook Decl. Ex.

---

[4]  As the proposed class definition set forth, <u>supra</u>, makes
clear, the class at issue in this matter would be limited to
natural persons.  (Docket Item 27.)

D), make clear.  Defendants' argument bears no relation to the facts of this case; it is less than a make-weight.

The Court therefore finds that Plaintiff's claims are typical of the class, in accordance with Fed. R. Civ. P. 23(a)(3).

### d.   Adequacy of Representation

The final Rule 23(a) consideration is whether "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  With regard to Rule 23(a)'s adequacy prong, the Court of Appeals has explained that the Court's task is to address whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class."  Hassine, 846 F.2d at 179.  "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."  Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975).

Both criteria are satisfied in this case.  As is evidenced by the Certification submitted by Plaintiff's attorney, Donald M. Doherty, Jr., Esq., and by the conduct of this litigation thus

far, Plaintiff's counsel has sufficient qualifications and experience to litigate this matter on the class's behalf.  Mr. Doherty has been a practicing attorney for fourteen years, (Doherty Cert. ¶ 14(c)); his practice deals almost exclusively with class actions, (id. at ¶ 14(d)); and he has extensive experience litigating consumer rights and FDCPA cases.  (Id. at ¶ 14(d)-(l).)  Based on these qualifications, and Mr. Doherty's demonstrated capacity in litigating this matter to date, the Court concludes that Plaintiff's counsel is "qualified, experienced, and generally able to conduct the proposed litigation."[5]  Wetzel, 508 F.2d at 247.

Moreover, based on the similarity between the circumstances surrounding Plaintiff's and the class members' claims, discussed supra, and Defendants' concession that Plaintiff is adequately suited to protect the class's interests, (Defs.' Opp'n Br. at 15), the Court concludes that Plaintiff has the ability and incentive to represent the class's claims.  Hassine, 846 F.2d at 179.  In so concluding, the Court recognizes that this action was filed and has been pursued on Mr. Stair's behalf by his nephew and power of attorney, Dean Smith.[6]  It is evident from Mr. Smith's Certification that although the debt collection letter at

---

[5] For the same reasons, the Court finds that Plaintiff's counsel is appropriate class counsel under Fed. R. Civ. P. 23(g).

[6] See Note 1, supra.

issue in this case was not mailed to Mr. Smith personally, he is familiar with the circumstances of this case, had contact with Defendant Cook over the letter and the nature of Mr. Stair's debt, and is committed to litigating the class's claims.  (Smith Cert. ¶¶ 1-8.)  Stated differently, Mr. Stair does not become inadequate as a class representative merely because his nephew, Dean Smith, exercises his power of attorney in these financial dealings.

The Court accordingly finds that "the representative part[y] will fairly and adequately protect the interests of the class," and that Rule 23(a)'s final criterion is satisfied in this case. Fed. R. Civ. P. 23(a)(4).

### 3.   Federal Rule of Civil Procedure 23(b)(3)

In addition to the requirements of Rule 23(a), a party seeking class certification must demonstrate that certification is appropriate under one of the subsections of Rule 23(b). Chiang, 385 F.3d at 264.  Plaintiff argues that certification in this case is appropriate under Rule 23(b)(3), which provides that a class action may be maintained if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

The Court finds that Rule 23(b)(3)'s predominance and superiority requirements are easily satisfied here.  The predominance requirement "tests whether the class is sufficiently cohesive to warrant adjudication by representation," requiring that "issues common to the class . . . predominate over individual issues."  Danvers, 2008 WL 4181728, at *6 (internal quotations and citations omitted).  The predominance inquiry shares with Rule 23(a)'s commonality criterion a consideration of whether the class members' claims are factually and legally similar, see Johnston v. HBO Film Mgmt., 265 F.3d 178, 184 (3d Cir. 2001), but the Rule 23(b)(3) standard is "more demanding," Danvers, 2008 WL 4181728, at *6, requiring that common class issues predominate over individual issues.  See In re LifeUSA Holding Inc., 242 F.3d 136, 145-46 (3d Cir. 2001).

In this case, the claims of the members of the proposed class share an essential common question of law that predominates over all legal issues in this case.  All of the class members received a debt collection letter from Defendants within the FDCPA's statute of limitations in which Defendants advised the recipient of his or her right to dispute the debt within thirty days, but imposed a response date more than two weeks short of the thirty-day validation period.  (Doherty Cert. ¶ 4 and Ex. 1.) Whether the provision of section 1692g notice in these nearly identical letters was "overshadowed," Swanson, 869 F.2d at 1225,

or "contradicted by accompanying messages from the debt collector," Graziano, 950 F.2d at 111, is a question of law common to all members of the proposed class and is, indeed, the central legal issue in this dispute.  Because the class members here all share a common nucleus of fact – the receipt of nearly identical debt collection letters – and the viability of their claims turn on a single legal determination as to the conformity of the letters with section 1692g, the Court finds that this class satisfies Rule 23(b)(3)'s predominance requirement.

The Court likewise finds that the proposed class meets Rule 23(b)(3)'s superiority requirement.

> The superiority inquiry requires us to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.  There are four nonexclusive factors that we should consider under the provisions of Rule 23(b)(3): (1) the interest of individual members of the class in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action.

Danvers, 2008 WL 4181728, at *8 (some internal quotations and citations omitted).

All four factors weigh in favor of class certification here. With regard to the interest of individual class members in prosecuting this action and the extent of litigation commenced elsewhere, Plaintiff claims, and Defendants do not dispute, that no potential members of the class have filed suit on any claims

24

arising out of Defendants' debt collection letters.  Given that the statute of limitations on FDCPA claims is one year, 15 U.S.C. § 1692k(d), and the proposed class at issue here includes recipients of letters Defendants mailed between September 20, 2005 and September 20, 2006, this would appear to be the only lawsuit to have arisen out of Defendants' letters.  As this is the only litigation pertaining to the letters in question, the class members have, to date, exhibited no interest in controlling the prosecution of this action in this forum or elsewhere; no class member's interests in independently prosecuting his or her claim would be frustrated by certifying the class at issue here.

Moreover, "the desirability of concentrating claims in a given forum" weighs in favor of permitting this lawsuit to proceed as a class action.  Danvers, 2008 WL 4181728, at *8.  As Plaintiff notes, in light of the limited quantum of damages available on any class member's claim, individualized prosecution by the class members would be inefficient and is therefore unlikely.  See Klay v. Humana, Inc., 382 F.3d 1241, 1270 (11th Cir. 2004) (noting that "as the Supreme Court has recognized[,] . . . class actions often involve 'an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit.  The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually'") (quoting Phillips Petroleum

<u>Co. v. Shutts</u>, 472 U.S. 797, 813 (1985)).  Finally, the Court is aware of no "management difficulties likely to be encountered in pursuing the class action."  <u>Danvers</u>, 2008 WL 4181728, at *8.

The Court accordingly finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," and will grant Plaintiff's motion for class certification.  Fed. R. Civ. P. 23(b)(3).  The class certified herein shall be defined as:

> All those 227 natural persons who received collection correspondence from the Defendants Rodman Cook and the Thomas & Cook law firm dated between September 20, 2005 through to September 20, 2006 seeking to collect upon a consumer debt and which included a thirty-day time frame to validate the debt yet sought a response within a time less than the thirty days.

Additionally, pursuant to Rule 23(g), Fed. R. Civ. P., the Court shall appoint Donald M. Doherty, Jr., Esq. of the law firm Friedman Doherty, LLC, as class counsel.

**C.    Summary Judgment**

Plaintiff has moved for summary judgment on behalf of himself and the class as to the issues of liability and damages. For the reasons explained below, the Court will grant Plaintiff's motion.

1.   <u>Standard of Review</u>

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. <u>Id.</u> In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999) (quoting <u>Liberty Lobby</u>, 477 U.S. at 255).

2.   <u>Analysis</u>

The Court will grant Plaintiff's motion for summary judgment as to the issues of liability and damages. In its February 7, 2008 Opinion and Order, the Court found that Defendants' debt collection letter to Plaintiff — which, it is undisputed, was identical in all relevant respects to the letters received by the 227 additional class members, (Doherty Cert. ¶ 4) — failed to comply with <u>Graziano</u>'s requirement that the initial

communications of debt collectors "explicate [the] debtor's
[section 1692g] rights . . . effectively." <u>Graziano</u>, 950 F.2d at
111.  The Court thus denied Defendants' motion for summary
judgment, and further observed that it appeared that

> Plaintiff is entitled to judgment as a matter of law on
> the issue of liability.  Because Plaintiff did not file
> a cross-motion for summary judgment, however, the Court
> will afford Defendants an opportunity to present relevant
> evidence in opposition to the granting of summary
> judgment against them.

(Docket Item 20 at 15) (internal quotations and citations
omitted).

The only evidence Defendants have presented as to the issue
of liability is evidence suggesting that Plaintiff, as well as
certain other class members, were contacted by different debt
collectors prior to receiving Defendants' debt collection
letters.  (Cook Decl. Ex. D; Minuchi Decl. ¶¶ 2-11.)  Based on
the Court's holding, <u>supra</u>, that "[t]he requirement of providing
valid disclosures under § 1692g applies to each debt collector,"
including subsequent debt collectors, <u>Francis</u>, 389 F. Supp. 2d at
1040 n.2, the evidence adduced by Defendants fails to demonstrate
the existence of a material dispute of fact as to liability;
whether or not the class members were contacted by different debt
collectors prior to receiving the initial communication from
Defendants does not impact the viability of the class members'
claims, since a debt collector must comply with section 1692g's
notice requirements "even if a previous debt collector (or

28

creditor) has given such a notice." 53 Fed. Reg. at 50108.  In light of this Court's determination that section 1692g applies to subsequent debt collectors, and for the reasons explained in the Court's February 7, 2008 Opinion, the Court concludes that Plaintiff is entitled to summary judgment as to the issue of FDCPA liability.

Finally, the Court will grant Plaintiff's motion for summary judgment on the matter of damages.  The damages section of the FDCPA provides:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
>
> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
>
> (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . .

15 U.S.C. § 1692k.

As the named plaintiff in this case, Mr. Stair, has neither alleged nor proven actual damages, his maximum recovery under the statute is $1,000.  Additionally, as the parties have stipulated that Defendant Cook's net worth is $275,000, (Doherty Cert. Ex.

29

2), the class's damages are limited to $2,750, which is "1 per centum of the net worth of the debt collector."  15 U.S.C. § 1692k(a)(2)(B).  Finding no material dispute of fact as to the damages owed by Defendants in this case, the Court will grant Plaintiff's motion for summary judgment on damages, awarding Plaintiff Stair $1,000 and $2,750 to be distributed among the class members.

### D.   Attorney's Fees

Plaintiff has moved for an award of reasonable attorney's fees for his counsel's efforts in litigating this matter.  Under the FDCPA, a "debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person" for the "costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).

The Court finds that Plaintiff's application for attorney's fees is premature.  In this class action, the award of attorney's fees is governed by Rule 23(h), Fed. R. Civ. P., which requires, among other things, that notice of the motion of class counsel for attorney's fees and nontaxable costs must be "directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1). The rule does not necessarily require such motion to be served on class members, but rather that it be "directed" to them in a reasonable manner.

In this statutory fee shifting case, the fees of Class
Counsel will be paid by Defendants, and not from the common fund
generated by counsel's efforts.  Accordingly, it would not be
reasonable to require that Class Counsel make service of the
motion for attorney's fees upon all class members, since the
amount of fees will not diminish their recovery from the class
fund.  Nonetheless, the class is entitled to notification of the
fees and costs that Class Counsel reasonably intends to seek for
all compensable services, perhaps expressed as an upper limit of
such anticipated request.  Such notice directed to the class
under Rule 23(h)(1) is a prerequisite for approval of Class
Counsel's fees.  Such notice to the class should be included in
the Rule 23(c)(2)(B) notice, discussed in Part III, below.

The appropriate time for refiling the attorney's fee motion
will occur when the contours of the claim administration are
known, and Class Counsel may reapply for attorney's fees and
costs within ten (10) days after approval of a plan for
submitting claims and distribution of the class fund.[7]

---

[7]  Class Counsel's renewed fee application shall also be
required to provide evidence of the reasonableness of counsel's
claimed hourly rate.  In assessing the reasonableness of a claim
for attorneys' fees, the Court employs a "'lodestar' formula,
which requires multiplying the number of hours reasonably
expended by a reasonable hourly rate." Maldonado v. Houstoun,
256 F.3d 181, 184 (3d Cir. 2001) (citing Hensley v. Eckerhart,
461 U.S. 424 (1983)).  With regard to the reasonableness of an
attorney's hourly rate, this Court has explained:

The reasonable hourly rate is determined by reference to

## III. NOTICE TO CLASS

Rule 23(c)(2)(B) requires that the members of a Rule 23(b)(3) class, as in this case, be given notice of the nature of the action, the definition of the class certified, the opportunity to opt out of the class and mechanism for doing so, and other important information that is "clearly and concisely state[d]" in "plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).[8]  Such notice must be given to all persons who

---

the marketplace. <u>See</u> <u>Missouri v. Jenkins</u>, 491 U.S. 274, 285 (1989) ("We have consistently looked to the marketplace as our guide to what is 'reasonable'.")  The attorney's customary billing rate is the proper starting point for calculating fees. <u>Cunningham v. City of McKeesport</u>, 753 F.2d 262, 268 (3d Cir. 1985).

<u>A.V. v. Burlington Tp. Bd. of Educ.</u>, No. 06-1534, 2007 WL 1892469, at *9 (D.N.J. June 27, 2007).

While Plaintiff's counsel has submitted an account of the time he spent litigating this matter at a rate of $325/hour, he does not appear to have submitted evidence necessary for this Court's determination of whether his hourly rate in this case was reasonable – namely, evidence of his own customary billing rate and of the rates charged by attorneys of Mr. Doherty's training and experience in his practice area and geographic region. <u>Id.</u> Without such evidence, the Court cannot adequately determine the quantum of fees that would constitute a reasonable award in this case.

[8]  Fed. R. Civ. P. 23(c)(2)(B) provides as follows:

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

can be identified through reasonable effort, id.  In the present case, such notice must now be proposed by Class Counsel, for Court approval, to apprise the 227 individuals in this class regarding their rights and options.

It also appears that a second component of notice to the class is necessary at this time, namely the fact that summary judgment has been entered against the Defendants but also that the expected recovery for the class is limited by law to $2,750 to be divided among the 227 class members (or such number of members who do not opt out and who submit claims), for a pro rata distribution that may be as small as approximately $12.11 each. Such notice regarding the conduct of the action is permitted in the Court's discretion under Rule23(d)(1)(B), Fed. R. Civ. P., and will be required here within the forthcoming Rule 23(c)(2)(B) notice.

-----

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Court will require that counsel confer regarding the approval form of class notice, and that Class Counsel, within ten (10) days of entry of the accompanying Order, submit an appropriate motion for approval of class notification for the Court's approval.  Counsel shall also propose a plan for the administration of the distribution of the settlement fund to class members.[9]

## IV.   CONCLUSION

For the reasons explained above, Plaintiff's motion for class certification, as well as Plaintiff's motion for summary judgment as to the issues of liability and damages, will be granted.  Plaintiff's motion for attorney's fees will be denied without prejudice to renewal after the Court receives and approves a proposed plan for filing claims and distribution of the class fund.  The accompanying Order will be entered.


<u>**September 23, 2008**</u>                    <u> **s/ Jerome B. Simandle** </u>
Date                                JEROME B. SIMANDLE
                                    United States District Judge

---

[9]   Class Counsel's reasonable costs of administration will be compensable by Defendants under 15 U.S.C. 1692k(a)(3), <u>supra</u>.