[relates to Docket Item 42]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM F. STAIR, by and through his appointed power of attorney Dean Smith, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>THOMAS & COOK and RODMAN L. COOK,<br><br>        Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 06-4454 (JBS/AMD)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE**, District Judge:

    This matter is before the Court upon Plaintiffs' motion for an award of counsel fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and final judgment [Docket Item 42]. THIS COURT FINDS AS FOLLOWS:

    1. Plaintiff William F. Stair, through his power of attorney Dean Smith, filed this action on behalf of himself and others similarly situated, alleging that a debt collection letter that he received from Defendants violated the Fair Debt Collection Practices Act (the "FDCPA" or the "Act"), 15 U.S.C. § 1692, et seq. Section 1692g of that Act requires that debt collectors like Defendants provide certain information in writing to a consumer within five days of the "initial communication" with the consumer, and "mandates the debt collector to cease all

collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer." Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000) (citing 15 U.S.C. § 1692g(b)).

    2.  Defendants moved for summary judgment as to Mr. Stair's claim, arguing that the notice they included in Plaintiff's debt collection letter complied with the notice requirements set forth in section 1692g.  In its February 7, 2008 Opinion and Order [Docket Items 20 and 21], the Court denied Defendants' motion for summary judgment.  Recognizing that under the FDCPA, the effectiveness of a debt collection letter's provision of notice is to be "interpreted from the perspective of the 'least sophisticated debtor,'" Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991), the Court explained that Defendants' provision of notice was inconsistent with the statutory requirements and likely to mislead an unsophisticated debtor.[1]  (Docket Item 20 at 11-12.)

---

[1] Specifically, the Court concluded that the debt collection letter contained conflicting deadlines, which would cause an unsophisticated debtor to "harbor serious doubts as to his ability to dispute or verify the debt within thirty days" pursuant to the FDCPA.  (Docket Item 20 at 11); see also Graziano, 950 F.2d at 111 (where the statutory notice in a debt collection letter is "contradicted by accompanying messages from the debt collector," such notice has not been provided effectively within the meaning of 15 U.S.C. § 1692g).

3.  The Court found, moreover, in light of the letter's apparent noncompliance with the FDCPA, that Plaintiff, rather than Defendants, appeared to be entitled to judgment as a matter of law on the question of liability, and the Court afforded Defendants the opportunity to submit evidence in opposition to the entry of summary judgment in Plaintiff's favor.  (Id. at 15.)  Plaintiff thereafter moved for summary judgment and class certification [Docket Item 24].  Defendants opposed Plaintiff's motion, arguing with respect to the question of liability that although their debt collection letter was Defendants' "initial communication with [Mr. Stair] in connection with the collection of [his alleged] debt," § 1692g, the fact that they were not the first debt collectors to communicate with Mr. Stair about this debt relieved them of any obligation to comply with the FDCPA's notice and validation requirements.

4.  In its September 23, 2008 Opinion and Order [Docket Items 31 and 32], the Court rejected this argument, finding that it was inconsistent with both the text and object of the FDCPA, the Federal Trade Commission's commentary on the Act, and the decisions of courts that had previously considered the question.  (Docket Item 31 at 7-14.)  The Court entered summary judgment in Plaintiff's favor on the issues of liability and damages.  (Id. at 27-30.)  As the Court explained in the September 23, 2008 Opinion, damages in this matter were statutorily limited to

$1,000 for the named Plaintiff and $2,750 for the class (i.e., "1 per centum of the net worth of the debt collector," 15 U.S.C. § 1692k(a)(2)(B), a fact to which the parties stipulated). The Court likewise granted Plaintiff's motion for class certification, certifying a class that consisted of:

> All those 227 natural persons who received collection correspondence from the Defendants Rodman Cook and the Thomas & Cook law firm dated between September 20, 2005 through to September 20, 2006 seeking to collect upon a consumer debt and which included a thirty-day time frame to validate the debt yet sought a response within a time less than the thirty days.

(Docket Item 32 at 1-2.)[2] Plaintiff thereafter filed the motion for attorney's fees and final judgment [Docket Item 42] presently under consideration. Defendants have not opposed Plaintiff's motion for the entry of final judgment, nor do Defendants contest Plaintiff's entitlement to an award of attorney's fees; Defendants do, however, lodge a discrete objection to the amount of the award, which the Court addresses below.

---

[2] Notice of this class action was provided to the class members pursuant to the Court's November 5, 2008 Order [Docket Item 47]. Of the 227 mailings, 46 claim forms were properly filled out by class members electing to participate. (Doherty Supp. Cert. ¶ 9.) One claim form was returned by a class member who did not fill in a name or address and who has not been identified. (Id. at ¶ 10.) One opt-out – from Mr. & Mrs. Gerard Mullen – was received by class counsel. (Id. at ¶ 8.) The $2,750 class fund is thus to be divided among the 46 class members who returned claim forms which were properly completed, resulting in an award of $59.78 per claimant. (Id. at ¶ 11.) The Court agrees with class counsel that the remaining sum of $0.12 in the fund should be distributed to a randomly selected class member.

4

5.  The Court will grant Plaintiff's motion for attorney's fees.  Under the FDCPA, "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court," are to be awarded to the plaintiff.[3]  15 U.S.C. § 1692k(a)(3).  The Court's determination of a reasonable attorney fee under the FDCPA follows the familiar "lodestar" method that applies to fee awards under other fee-shifting statutes.  See Graziano, 950 F.2d at 114.  The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate."  Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (citation omitted).

6.  "Once the party seeking fees provides . . . [evidence of the hours worked and the rate claimed], the burden shifts to its adversary to contest, with sufficient specificity, the reasonableness of the hourly rate or the reasonableness of the hours expended."  Microsoft Corp. v. United Computer Res. of N.J., Inc., 216 F. Supp. 2d 383, 387 (D.N.J. 2002); Interfaith Community Organization v. Honeywell Intern., Inc., 426 F.3d 694, 708 (3d Cir. 2005).  The Court of Appeals has consistently emphasized that in assessing the reasonableness of hours expended and the reasonableness of an attorney's hourly rate, the

---

[3] Plaintiff inarguably was "successful" in litigating this action, § 1692k(a)(3), in that the Court entered summary judgment in his favor as to both liability and damages on his FDCPA claim.

"district court cannot decrease a fee award based on factors not raised at all by the adverse party." Interfaith Community Organization, 426 F.3d at 713 (citation omitted); Loughner v. University of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

7.  In this case, Plaintiff seeks an award of $33,047.50 in fees and $3,444.97 in costs. (See Doherty Supp. Cert.) Plaintiff's counsel have submitted detailed time logs and affidavits in support of the hours expended in litigating this matter and the rates charged by Plaintiff's counsel. (Doherty Cert. Exs. 1-5; Doherty Supp. Cert. ¶¶ 12-13.) The Court has reviewed these materials and finds that they provide ample support for the lodestar in this case. See Interfaith Community Organization, 426 F.3d at 708.

8.  The lodestar requests, documented by contemporaneous time and billing entries, are as follows:

|  | Hours Worked | Base Hourly | Total |
|---|---|---|---|
| Doherty[4] | 93.0 | $325.00 | $30,225.00 |

---

[4] Donald M. Doherty, Jr., who served as sole class counsel, has been a practicing attorney since 1994 with a concentration in consumer law and civil rights litigation. He has served as designated class counsel in at least 20 matters in the past 4 years. Doherty Cert. Ex. 1 at ¶¶ 5-6. His hourly billing rate of $325.00 appears to be reasonable, as demonstrated by the supporting Certs. of John F. Innelli, Esq., and John Coughlin, Esq., at Doherty Cert. Exs. 3 & 4.

```
Friedman[5]              6.1          $325.00          $ 1,982.50
Markey (paralegal)      11.2          $ 75.00          $   840.00
```

Total:                                                 $33,047.50

The costs are likewise well-documented, necessary and reasonable, including the costs of administering notice to the class, which was performed quickly, efficiently and effectively; all costs of litigation and class administration total $3,444.97.

    9.  Significantly, Defendants make clear in their submissions that they "do not contest the amounts of hours worked or the hourly rates submitted in support of the application." (Defs.' Opp'n Br. at 1.)  The Court thus concludes that the lodestar amount for the fee award in this matter is $33,047.50 in fees and $3,444.97 in costs.

    10.  "Following a determination of the lodestar, either party may seek adjustment.  If that party meets the burden of proving that an adjustment is appropriate, the lodestar amount may be increased or reduced at the discretion of the District Court."  Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001). The only adjustment sought herein is a downward adjustment sought by Defendants, who argue that because the "offense [at issue in this matter] was technical in nature and [that Defendants were]

---

[5] Sander Friedman has also been an attorney since 1993 and became involved in this case at the class notice and administration stage; he has also been designated as class counsel in numerous class actions.  Doherty Cert. Ex. 5.  His hourly fee of $325.00 likewise seems reasonable.

'hardly morally culpable,'" the amount of the lodestar should be adjusted downward.[6] (Defs.' Opp'n. Br. at 5) (quoting <u>Carroll v. Wolpoff & Abramson</u>, 53 F.3d 626, 629 (4th Cir. 1995)).

11. The Court will not reduce the fee award for the reasons urged by Defendants. The Court first notes that "[t]he lodestar is strongly presumed to yield a reasonable fee," <u>Washington v. Philadelphia County Court of Common Pleas</u>, 89 F.3d 1031, 1035 (3d Cir. 1996), and that "Defendants have the burden of establishing that a downward adjustment in the lodestar is necessary." <u>Mosaid Techs. Inc. v. Samsung Elecs. Co.</u>, 224 F.R.D. 595, 597 (D.N.J. 2004).

12. Defendants have not carried this burden. In the case upon which Defendants exclusively rely, <u>Carroll v. Wolpoff & Abramson</u>, the Court of Appeals for the Fourth Circuit, emphasizing the "broad discretion" of district courts to calculate attorney's fees, held that the district court in that case did not abuse its considerable discretion in reducing an FDCPA fee award on account of the technical nature of the defendant's violation and the absence of immoral conduct. <u>Carroll</u>, 53 F.3d at 628, 629-31. The case stands more for its emphasis upon the broad discretion of the district court than for

---

[6] Plaintiff's counsel originally sought a twenty-percent enhancement of the base lodestar rate on account of the novel issues presented in this lawsuit. Upon Defendants' objection to this request, Plaintiff has withdrawn this aspect of his fee application.

8

the Fourth Circuit's endorsement of an evaluation of moral culpability in FDCPA fee award cases.

13.  The Court of Appeals for the Third Circuit has not suggested that district courts should account for the technical nature of an FDCPA violation or a defendant's moral culpability in assessing the reasonableness of an FDCPA fee award.  To the contrary, the Third Circuit has emphasized the contrast between section 1692k(b), which emphasizes that the amount of <u>statutory damages</u> may reflect the degree of the defendant's intent, and section 1962k(a)(3), which does not tie reasonableness of a <u>fee award</u> to such considerations:

> [Section 1962k(b), pertaining to statutory damages] specifies that, in determining the amount of statutory damages to be awarded, the court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  Cases interpreting this section have made clear that in the instance of a single, trivial, and unintentional violation of the Act, it is within the court's discretion to decline to award statutory damages at all.  However, section 1692k [pertaining to fee awards] contains no parallel language directing the court to consider particular factors in determining a reasonable attorney's fee.  In light of the explicit listing of factors to be considered in the award of statutory damages, and the absence of such a list for attorney's fees, <u>we think it inappropriate to read such factors into the word "reasonable" in section 1692k(a)(3)</u>.

9

Graziano, 950 F.2d at 113-14 (citations omitted, emphasis added).[7]

14. Even if such factors could figure into the Court's discretion as to the amount of a reasonable attorney's fee, the Court would not impose the downward adjustment sought by Defendants under the circumstances presented here. While the fee award yielded by the lodestar formula is significantly larger than the modest damage award achieved herein, a review of Plaintiff's counsel's billing records and the history of this litigation make clear that a considerable measure of Plaintiff's litigation resources were expended responding to the aggressive defense mounted by Defendants. As was their right, Defendants litigated this case to the hilt, raising a wide array of arguments over multiple motions that ranged from innovative (but unavailing) to frivolous.[8]

15. The upshot of Defendants' vigorous but unsuccessful litigation strategy was to significantly increase the resources necessary to litigate this case on all sides, notwithstanding the statutory cap on the potential damages at stake. See 15 U.S.C. §

---

[7] The quoted language arose in the context of the court's discussion of whether a fee should have been awarded, not the amount of the fee in question. This Court nonetheless finds the language instructive for its consideration of the amount of the fee to be awarded herein.

[8] With regard to one such argument, the Court noted that "Defendants' argument bears no relation to the facts of this case; it is less than a make-weight." (Docket Item 31 at 20.)

1692k(a)(2)(B).  Plaintiff's attorneys' records and the motion practice herein demonstrate that, in responding to Defendants' arguments, Plaintiff's counsel did not expend unreasonable resources.  In short, in light of the considerations explained above, the Court finds that Defendants bear the responsibility for the disproportion between the attorney hours expended in litigating this case and the modest damages awarded.  The Court declines to exercise its discretion to impose a downward adjustment upon the lodestar figure, which "is strongly presumed to yield a reasonable fee."  Washington, 89 F.3d at 1035.

    16.  For the reasons explained herein, the Court will grant Plaintiff's motion for an award of counsel fees and costs, awarding a total amount of $36,492.47, and will enter Final Judgment in favor of Plaintiff.  The accompanying Order is entered.

**June 10, 2009**                                         **s/ Jerome B. Simandle**
Date                                                           JEROME B. SIMANDLE
                                                                 United States District Judge